**Dalton L. CHASE, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary, Department of Health and Human Services, Defendant-Appellee.**

No. 86–3059.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 11, 1986.

Decided June 18, 1987.

Rehearing Denied Aug. 5, 1987.

Robert Gordon Skeen (Harry Goldman, Jr., Baltimore, Md., on brief), for plaintiff-appellant.

William Edmund Wilkin, Office of General Counsel, Social Security Div. (Breckinridge L. Willcox, U.S. Atty., Larry D. Adams, Asst. U.S. Atty., Donald A. Gonya, Chief Counsel for Social Security, Randolph W. Gaines, Deputy Chief Counsel for Social Security Litigation, A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief), for defendant-appellee.

Before WINTER, Chief Judge, RUSSELL, Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

PER CURIAM;

The plaintiff appeals the denial of social security benefits. His insured status under the Social Security Act ended on December 31, 1981. After extensive hearings the Administrative Law Judge found that the plaintiff had failed to establish disability under the Act prior to the termination of

his coverage on December 31, 1981. Such recommendation was adopted and approved by the Appeals Council. The plaintiff sought review of that final administrative decision in the district court. The cause was properly referred to the United States Magistrate, who, after examining the testimony and the medical records of the plaintiff concluded that the Secretary's decision that the plaintiff "was not continuously precluded from engaging in gainful activity for a continuous twelve month interval between November 3, 1978 and the expiration of his period of disability insured status on December 31, 1981" was supported by substantial evidence and he accordingly sustained the Secretary's decision denying benefits.

On review of the record, we agree, and accordingly affirm the decision of the district court upholding the denial of benefits herein.

AFFIRMED.

HARRISON L. WINTER, Chief Judge, dissenting:

In my view the administrative law judge (ALJ), whose decision became that of the Secretary, improperly applied the medical-vocational guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1 of § 200.00(a), to find that this claimant was not disabled because he was able "to engage in a full range of sedentary work activity ..." The error in the decision was in applying the grids, after making the erroneous finding that the medical evidence of record did not substantiate the claim of the nonexertional impairment of pain, coupled with other impairments.[1]

The presence of pain was documented in the medical reports of Drs. Hungerford and Lennox. There was also other objective evidence of pain. Indeed, the only substantial evidence in the case establishes that claimant is *impaired* due to pain. The ALJ disregarded all of this evidence without any discussion why it should not be believed. The use of the grids was thus improper because they are inapplicable

when a nonexertional impairment such as pain, is present. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Hammond v. Heckler*, 765 F.2d 424 (4 Cir.1985).

The case should be returned to the Secretary to obtain evidence from a vocational expert as to whether claimant, despite his physical impairments and pain, has sufficient residual skills to engage in substantial gainful activity.

I respectfully dissent from the majority's contrary determination.

## I.

There is no doubt that prior to the expiration date of his eligibility for disability benefits (December 31, 1981), claimant was disabled. He had a long history of treatment for chrondromalacia and joint disease of the knees and possible cervical disc disease. In October 1981, he underwent a surgical replacement of his entire right knee. At that time he was thought to be only "temporarily totally disabled." Because a claimant is entitled to benefits if the *onset* of disability lasting a continuous period of not less than twelve months occurs before the expiration of his insured status, the principal issue before the ALJ was whether claimant's disability would continue for a continuous period of not less than twelve months from October 1981. 20 C.F.R. § 404.1505(a). Thus evidence of pain after December 31, 1981, resulting from degenerative conditions which began prior to December 31 was relevant to whether the claimant was disabled prior to expiration of his insured status.

The claimant testified that he experiences severe pain two or three times a month and mild or nagging pain the rest of the time, that his only activities consist of watching television, talking to his wife, reading the newspaper and helping his son with his homework, that he cannot work because of his knees and that he cannot sit up straight with his knees bent. The ALJ found this testimony not credible because it was inconsistent with the claimant's testimony regarding his activities as a football

---

1. In fact the ALJ did receive testimony of a vocational expert. The ALJ made no reference to that testimony in his decision, and properly

so because the hypothetical questions put to the expert bore little resemblance to the evidence adduced at the hearing.

coach. This did not end the issue, however, because the medical records substantiate the existence of pain. There are written reports by Dr. Lennox on June 11, 1982[2] and Dr. Hungerford, on October 13, 1981, both of which were within twelve months of expiration of claimant's insured status on December 31, 1981. The report by Dr. Hungerford followed surgery to replace claimant's right knee on October, 1981 due to degenerative arthritis in that knee. (Jt. A. 249, 251, 255) Following that surgery, Dr. Hungerford reported:

> Mr. Dalton Chase is presently under my care for management status post total knee replacement ... This process is slow ... we cannot give you a definite date as to when he will be able to return to activities of daily living as of this time, and he is presently temporarily totally disabled. (Jt. A. 259)

Following discharge from the hospital, there was the following documentary proof that the claimant's disability continued:

—The discharge summary from Dr. Hungerford on October 31, 1981 reported under restrictions of activities: "Disability is one month." (Jt. A. 261)

—On December 3, 1981 Dr. Hungerford told the claimant to discard his crutches and use a cane. (Jt. A. 7)

—In a February, 1982 report, Dr. Lennox indicated that the claimant was having difficulty flexing his right knee (Jt. A. 540)

—Dr. Lennox reported on June 11, 1982 that "Mr. Chase is totally disabled from doing any gainful employment until further notice. He will be reevaluated again on October 26, 1982, at which time it will be determined when he can return to work ..." (Jt. A. 267)

—In an October 14, 1982 report, Dr. Lennox described the claimant as suffering from the early stages of arthritis, strained ligaments, and a painful prosthesis (artificial knee). He stated that the claimant was not completely recovered from the total knee replacement. (Jt. A. 540).

Of significance also is a written report of Dr. Hungerford after an additional examination conducted on May 12, 1983. Dr. Hungerford conducted the examination "for re-evaluation of bilateral knee pain approximately 21 months postop right total knee replacement." He took a history of pain experienced "in stair climbing," his examination of the right knee showed a "range of motion from 5 [degrees] to 100 [degrees] with mild patellofemoral grating noted at 30 [degrees]," and he stated his impression was "post operative pains, status post multiple surgical procedures on the right including total knee replacement ..." (J.A. 532). This report is beyond the period of insured status and 12 months thereafter, but it is relevant both to corroborate Dr. Lennox's report of June 11, 1982 that the claimant is totally disabled from doing any gainful employment and to indicate that Dr. Hungerford's discharge summary of October 31, 1981 that "[d]isability is one month" was a prediction that unfortunately never was fulfilled. *See Cox v. Heckler*, 770 F.2d 411 (4 Cir.1985).

There was even other objective evidence of pain. The record shows that, within the period of his insured status, claimant has had eight knee operations. These operations were performed primarily to relieve pain. (Jt. A. 155, 232, 453, 529, 532). Medical reports also consistently diagnose degenerative arthritis which could cause such pain. (Jt. A. 237, 244, 251, 255, 532) The wear and tear of these constant operations could also plausibly contribute to claimant's pain. The reports of many of the claimant's examining physicians also state that the claimant suffered from pain. (Jt. A. 155, 232, 238, 243, 529, 532)

## II.

While I concede that an ALJ's finding that the testimony of a claimant is not credible is usually insulated from appellate

---

2. The ALJ erroneously rejected the report of Dr. Lennox because it was rendered "after the date the claimant met the special earning's requirement." Jt. A. 7). Because the law requires the onset of disability before the expiration of insured status but does *not* require the disability to have existed continuously for twelve months prior to expiration of insured status, the report was relevant and entitled to consideration. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8 Cir. 1984).

review, the testimony and records of treating physicians are entitled to great weight. They may be ignored "only if there is persuasive contradictory evidence." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4 Cir. 1983). Certainly such persuasive contradictory evidence is absent here. Indeed the ALJ erroneously made no effort to explain why he disregarded the medical evidence of pain. *See Hammond v. Heckler, supra*, 765 F.2d at 426 (ALJ credibility determinations regarding pain must refer to medical evidence which supports his conclusions). Because the medical evidence was essentially unchallenged, it follows that application of the grids was legally improper.

I would reverse and remand the case to the district court with instructions to return it to the Secretary for further consideration including the production of evidence from a vocational expert.

